Filed 1/7/14  P. v. Hall CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056037 |
| v. | (Super.Ct.No. RIF1101887) |
| ALFONSO DANIEL HALL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed in part; remanded with directions in part.

Nancy Olsen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Alfonso Daniel Hall pled guilty to 58 felony counts and one misdemeanor count and was sentenced to a total term of 117 years four months in state prison.  On appeal, defendant contends:  (1) the matter must be remanded for resentencing because the trial court misunderstood its sentencing discretion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497; (2) the trial court abused its discretion when it refused to strike his prior strike conviction as to some or all of the counts; (3) his sentence constitutes cruel and unusual punishment under both the state and federal Constitutions; (4) the concurrent sentences on the 15 convictions for being a felon in possession of a firearm must be stayed pursuant to Penal Code section 654; and (5) the abstract of judgment and the court's minute order of the sentencing hearing must be corrected to accurately reflect the court's oral pronouncement of judgment.  Because the court's oral pronouncement is ambiguous as to the section 654 issue, we will remand the matter for resentencing on this issue and for the court to correct its minute order and abstract of judgment.  We, however, reject defendant's remaining contentions.

I

FACTUAL AND PROCEDURAL BACKGROUND[1]

Beginning in November 2010, defendant committed a string of armed robberies throughout Riverside and San Bernardino counties.  Defendant was eventually apprehended on March 17, 2011, after robbing employees at gunpoint of a Best Western

---

[1] The details of the underlying facts are not relevant to the issues on appeal; hence only a summary of the factual background will be provided.  The summary of the factual background is taken from the preliminary hearing.

Hotel. Defendant admitted to the investigating officers that he had robbed the Best Western Hotel, and also admitted to committing other robberies throughout two counties. Police investigation revealed that defendant, sometimes acting alone and other times with an accomplice, robbed employees of numerous small business retail stores at gunpoint.

On July 12, 2011, a 59-count information was filed charging defendant with 22 counts of robbery (Pen. Code, § 211; counts 1-2, 5, 8, 14, 17, 20, 23-24, 27, 30, 34-35, 37-40, 46, 48, 51, 54, 58);[2] two counts of attempted robbery (§§ 664/211; counts 11, 43); two counts of assault with a firearm (§ 245, subd. (a)(2); counts 3, 31); 15 counts of being a felon in possession of a firearm (§ 12021, subd. (a)(1); counts 4, 7, 10, 13, 16, 19, 22, 26, 29, 33, 42, 45, 50, 53, 56); 16 counts of second degree burglary (§ 459; counts 6, 9, 12, 15, 18, 21, 25, 28, 32, 36, 41, 44, 47, 49, 52, 55); one count of grand theft exceeding $400 (§ 487, subd. (a); count 57); and one misdemeanor count of battery (§ 242; count 59). The information also alleged that defendant personally used a firearm (§ 12022.53, subd. (b), or § 12022.5, subd. (a)) within the commission of 19 robberies and the two attempted robberies; that defendant personally used a deadly weapon, to wit, a knife (§ 12022, subd. (b)(1)) during the commission of one of the robberies (count 58); and that a principal was armed with a firearm (§ 12022, subd. (a)(1)) during the commission of two of the robberies (counts 37 & 38). The information further alleged that defendant had suffered one prior serious conviction, to wit, a 2008 attempted residential burglary,

---

[2] All future statutory references are to the Penal Code unless otherwise stated.

(§ 667, subd. (a)) and one prior serious and violent strike conviction, to wit, the same 2008 attempted residential burglary (§§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)).

On January 31, 2012, defendant pled guilty to all the charges and admitted all the enhancement allegations. Defendant also admitted that he had previously been convicted of a prior serious felony and a prior strike conviction.

On April 2, 2012, defendant filed a motion to dismiss his prior strike conviction pursuant to section 1385. He claimed that he fell outside the spirit of the three strikes law, his actions were committed as a result of his drug addiction, he did not have an extensive criminal record, and he would be receiving a sentence in excess of 100 years if the court did not exercise its discretion. The People filed an opposition noting defendant's prior criminal history, the seriousness of the current crimes, the potential for violence based on defendant's use of a gun to commit the current crimes, his leadership role in recruiting accomplices, and his continual defiance of the law as evidenced by his arrest for assault and indecent exposure while in custody.

At the sentencing hearing, the trial court addressed defendant's *Romero* motion and invited further argument. Both parties submitted on the matter. The court noted that in looking at defendant's "background, current offenses, attitude towards the current offenses, behavior since arrest of the current offenses," it did not believe defendant was outside the spirit of the three strikes law. Indeed, the court stated: "You [defendant] appear to be almost exactly what they wrote the law for." The court further asserted, "The only reason to strike a strike in this case would be because the consequences of the

4

three-strikes law are so severe, and that's the one reason that's quite clear I can't use. [¶] [Defendant] is an individual that the law describes. The writers of the law had [defendant] in mind, and the writers of the law produce these consequences, the consequences which I agree with the defense are severe. There's no basis on which to avoid it. If the law were such that judges were free to simply tailor the three-strike law on individual cases, *strike it as to some counts, not as to others*, to reach a sentence less severe than the one prescribed by law simply because of the belief that the sentence is too long, this would be such a case because I think the sentence is going to be too long. But it's the one mandated by law. [¶] So the request to strike *any* portions is denied." The court thereafter sentenced defendant to a total term of 117 years four months in state prison with credit for time served.

II

DISCUSSION

A.      *Whether Court Misunderstood Scope of Discretion*

Defendant contends that the case must be remanded for resentencing because the trial court misunderstood the scope of its sentencing discretion when it mistakenly believed it could not strike his prior strike conviction as to some but not all counts. Defendant refers specifically to the trial court's statement that "[i]f the law were such that judges were free to simply tailor the three-strike law on individual cases, *strike it as to some counts, not as to others*, to reach a sentence less severe than the one prescribed by law . . . ." We conclude the record is insufficient to affirmatively establish that the court

5

was unaware of its discretion to strike the prior conviction allegation on a count-by-count basis.

In sentencing a defendant under the three strikes law, courts have the discretion to strike a prior conviction in the interests of justice. (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529-530.) It is also well settled "that a trial court has discretion in a Three Strikes case to strike prior conviction allegations on a count-by-count basis." (*People v. Garcia* (1999) 20 Cal.4th 490, 499.) On review, we presume the trial court correctly exercised its discretion to strike a prior conviction in the interests of justice. (*People v. Fuhrman* (1997) 16 Cal.4th 930, 943-945.) Relief on appeal is inappropriate unless the record affirmatively reflects that the court misunderstood its discretion or otherwise incorrectly applied the law in deciding whether to strike a prior conviction allegation under section 1385. (*Ibid*.)

The record here does not establish that the trial court was obligated to decide whether to exercise its discretion to strike the prior conviction allegations on a count-by-count basis, much less that the court was unaware of its power to do so. Defendant's *Romero* motion did not ask the court to exercise its discretion in this manner. Rather, defendant argued that the interests of justice would be served by striking his prior strike conviction, such that he would not be subjected to receive a punishment in excess of 100 years. Defendant offers no authority for the proposition that the sentencing court has a sua sponte duty to consider whether to strike prior conviction allegations on each individual count or as to some and not all.

6

Moreover, the record fails to affirmatively establish that the court was unaware of its discretion to strike the prior conviction allegation on individual counts. Defendant's *Romero* motion cited to *Garcia*, *supra*, 20 Cal.4th 490, which concluded that "a trial court in a Three Strikes case may exercise its discretion under section 1385, subdivision (a), so as to dismiss a prior conviction allegation with respect to one count, but not with respect to another." (*Id*. at pp. 503-504.) The trial court's comments at the sentencing hearing merely reflect its understanding that it declined to strike the prior strike conviction as to all counts because it did not find defendant to be outside the spirit of the three strikes law considering defendant's background, character, current offenses, and prospects for the future. Although the court stated "[i]f the law were such that judges were free to simply . . . strike it as to some counts, not as to others," it concluded, "So the request to strike *any* portions is denied." In addition, the court's expressed dissatisfaction with the severe consequences of the three strikes law does not constitute affirmative proof that the court misunderstood its discretion to strike the prior conviction allegation as to some counts and not to all. Indeed, the trial court in *Garcia* expressed a similar reservation with the consecutive sentencing requirement, yet proceeded to strike the defendant's prior strike allegations as to one of two burglary counts. (*Garcia*, at p. 495.)

While it is true that "an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss" a strike prior (*People v. Carmony* (2004) 33 Cal.4th 367, 378 (*Carmony*)), we do not believe that the court's remarks here indicate that it misunderstood the scope of its authority. Examining the remarks in context reveals that

7

the court believed there could be no real doubt that defendant's behavior fell within the spirit of the three strikes law; as the court also explained, "as I look at your client's background, current offenses, attitude towards the current offenses, behavior since the arrest of the current offenses, [defendant], I see nothing that says you are not a person that is within the character and spirit of the three-strikes law. You appear to be almost exactly what they wrote the law for." The court's language here even mirrors that of *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), which held that the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies" when ruling on a motion to dismiss a prior serious or violent felony conviction subject to the three strikes law. (*Id*. at p. 161.)

Defendant also refers to the trial court's statements in regards to the severity of the consequences of the three strikes law and "no basis on which to avoid it." Relying on these statements and the court's comments that it would consider defendant's willingness to take responsibility and genuine remorse, defendant argues that the court made conflicting statements during the proceedings showing the court misunderstood its sentencing discretion. The court's statements, however, do not suggest that it lacked all authority to dismiss defendant's prior strike conviction or that it could not do so as to all

8

the counts or on a count-by-count basis; rather, the court was simply acknowledging that it could not dismiss defendant's strike prior based on its personal sympathy for defendant, as it is an abuse of discretion for a trial court to dismiss prior strike convictions " 'guided solely by a personal antipathy for the effect that the three strikes law would have on [a] defendant.' " (*Romero*, *supra*, 13 Cal.4th at p. 531.)

Taken in their entirety, the trial court's remarks illustrate simply that it properly understood that a "court's discretion to strike prior felony conviction allegations in furtherance of justice is limited" (*Romero*, *supra*, 13 Cal.4th at p. 530), and that "no weight whatsoever may be given to factors extrinsic to the [three strikes] scheme . . . ." (*Williams*, *supra*, 17 Cal.4th at p. 161). "[A] primary purpose of the [t]hree [s]trikes law was to restrict judicial discretion." (*Garcia*, *supra*, 20 Cal.4th at p. 501.) And "the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so." (*Carmony*, *supra*, 33 Cal.4th at p. 378.) We therefore reject defendant's contention that the trial court misunderstood the scope of its discretion to dismiss his strike prior.

B.    *Motion to Dismiss Prior Strike Conviction*

Defendant also argues that the trial court abused its discretion when it declined to dismiss his prior strike conviction as to some or all counts in the interests of justice. We disagree.

A trial court's decision to not dismiss or strike a prior serious and/or violent felony conviction allegation under section 1385 is reviewed for abuse of discretion. (*Carmony*, *supra*, 33 Cal.4th at p. 376.) Because there is "a strong presumption" that the sentence required under the three strikes law "is both rational and proper" (*id*. at p. 378), a trial court abuses its discretion in failing to dismiss a prior strike conviction only if "its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id*. at p. 377.) The defendant carries the burden " ' "to clearly show that the sentencing decision was irrational or arbitrary." ' " (*Id*. at p. 376, quoting *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977.)

"It is not enough to show that reasonable people might disagree about whether to strike one or more of his prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance. [Citation.]" (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

The touchstone of the analysis must be "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, 17 Cal.4th at p. 161.)

Defendant contends the court should have granted his request to strike his prior strike conviction given his age, background, character, willingness to take responsibility, lack of parental guidance and criminal record, remorse, drug addiction, and given that the prior and current crimes did not involve violence or serious injury to anyone. He further asserts that the court "erred when it failed to recognize a number" of significant mitigating factors, such as his young age, lack of a significant criminal record, and extremely disadvantaged background.

We cannot conclude the trial court abused its discretion in declining to strike defendant's prior strike conviction. The relevant considerations supported the trial court's ruling, and there is nothing in the record to show that the court declined to exercise its discretion on improper reasons or that it failed to consider and balance the relevant factors, including defendant's personal and criminal background. In fact, the record clearly shows the court was aware of its discretion, aware of the applicable factors a court must consider in dismissing a prior strike, and appropriately applied the factors as outlined in *Williams*.

11

This case is far from extraordinary. Defendant has manifested a persistent inability to conform his conduct to the requirements of the law. Though defendant does not have an extremely violent prior record of criminal behavior, his past and current criminal history is nonetheless serious. Defendant's prior strike for attempted residential burglary posed a potential danger to the occupants of the residence. Furthermore, he committed the instant string of robberies for a period of four months with the use of a firearm after surveilling the businesses and employees. In almost each of the current incidents, defendant pointed a loaded gun at the victims and demanded money, thereby inflicting fear into the victims and posing a risk for potential violence. In addition, as in the prior attempted burglary offense, defendant orchestrated and recruited others to assist him in committing some of the current offenses. Moreover, even while in custody for the instant offenses, defendant continued to violate the law by assaulting another inmate and indecently exposing himself to others.

The court here could not overlook the fact defendant continued to commit serious criminal offenses. His conduct as a whole was a strong indication of unwillingness or inability to comply with the law. He has also shown a proclivity for weapons through his illegal possession and use of firearms. Finally, he has shown his continual disregard for the law as evidenced by his criminal convictions, and continuing to violate the law even while in custody. It is clear from the record that prior rehabilitative efforts have been unsuccessful for defendant. All of these factors were relevant to the trial court's decision under *Romero*; there is no indication from the record here that the court failed to consider

the relevant factors, that it failed to properly balance the relevant factors, or that it abused its discretion in determining that as a flagrant recidivist defendant was not outside the spirit of the three strikes law. (*Williams*, *supra*, 17 Cal.4th at p. 161.)

C. *Cruel and Unusual Punishment*

For the first time on appeal, defendant further argues that his sentence of 117 years four months constitutes cruel and unusual punishment in violation of both the federal and the California Constitutions. He contends that because he is relatively young and capable of learning from his mistakes, he has a minimal criminal history, his current offenses are nonhomicide offenses, and he came from a disadvantaged home life, his sentence, which is the functional equivalent to a life sentence without the possibility of parole, is grossly disproportionate.

Both the federal and state Constitutions proscribe cruel and unusual punishment by prohibiting punishment that is grossly disproportionate to the severity of the offense. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17; *Harmelin v. Michigan* (1991) 501 U.S. 957, 1001; *People v. Marshall* (1990) 50 Cal.3d 907, 938.) Defendant, however, failed to object to the sentence, forfeiting his right to challenge the sentence as cruel and unusual punishment. (*People v. Russell* (2010) 187 Cal.App.4th 981, 993; *People v. Kelley* (1997) 52 Cal.App.4th 568, 583.)

Nonetheless, on the merits, defendant makes no showing that the sentence is grossly disproportionate to the severity of the crimes. (*Solem v. Helm* (1983) 463 U.S. 277, 288 (*Solem*); *People v. Dillon* (1983) 34 Cal.3d 441, 477-478.) In evaluating

13

proportionality, the state and federal standards are similar. Courts consider (1) the nature of the offense and the offender, (2) punishments for more serious offenses in the same jurisdiction, and (3) punishments for the same crime in other jurisdictions. (*Solem*, at pp. 290-292; *In re Lynch* (1972) 8 Cal.3d 410, 425-427.) A punishment may violate the California Constitution "if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*Lynch*, at p. 424, fn. omitted.) A criminal sentence is cruel and unusual under the federal Constitution if it is not proportional to the crime for which a defendant stands convicted. (*Solem*, *supra*, 463 U.S. 277; *Harmelin v. Michigan*, *supra*, 501 U.S. 957.)

Numerous courts have concluded that sentences in excess of 100 years, or ones that exceed a defendant's life expectancy, do not constitute cruel and unusual punishment. (See, e.g., *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382 [115 years plus 444 years to life]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1134-1137 [375 years to life plus 53 years]; *People v. Wallace* (1993) 14 Cal.App.4th 651, 666-667 [283 years eight months sentence]; *People v. Bestelmeyer* (1985) 166 Cal.App.3d 520, 532 [129 years].) In *Byrd*, the court stated: "In our view, it is immaterial that defendant cannot serve his sentence during his lifetime. In practical effect, he is in no different position than a defendant who has received a sentence of life without possibility of parole: he will be in prison all his life. However, imposition of a sentence of life without possibility of parole in an appropriate case does not constitute cruel or unusual

14

punishment under either our state Constitution [citation] or the federal Constitution. [Citations.]" (*People v. Byrd*, at pp. 1382-1383.) We find that defendant's sentence violates neither the state nor federal ban on cruel and unusual punishment.

Defendant invokes the recent decision of *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), which found a sentence of life imprisonment without parole for a *juvenile* who did not commit a homicide was *categorically* cruel and unusual under *all* circumstances. He appears to expand the hold in *Graham* to a claim that his de facto life sentence without parole is unconstitutional because he was only on the cusp of adulthood when he committed the instant string of armed robberies at a relatively young age of 21 years.

*Graham* on its face applies only to offenses committed as a *juvenile*. The court in *Graham* made it very clear that the new rule is specific to non-homicide offenses committed by *juveniles*, not those committed by "relatively young adults." The court said: "*Juvenile* offenders who committed both homicide and nonhomicide crimes present a different situation for a sentencing judge than *juvenile* offenders who committed no homicide. It is difficult to say that a defendant who receives a life sentence on a nonhomicide offense but who was at the same time convicted of homicide is not in some sense being punished in part for the homicide when the judge makes the sentencing determination. *The instant case concerns only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.*" (*Graham*, *supra*, 560 U.S. at p. 63, italics added.)

15

Given that the categorical limitation of *Graham* does not apply here, we are left with an adult offender who was convicted of 58 serious crimes, including 22 robberies, all but two committed with the use of a firearm. It is the number and seriousness of the offenses that permitted the trial court to impose a sentence that is equivalent to a life-without-parole term. The cumulative sentence of 117 years four months is not grossly disproportionate to the offenses committed or the manner of their commission.

Defendant also relies on *Miller v. Alabama* (2012) ___ U.S. ___ [132 S.Ct. 2455] (*Miller*), *People v. Caballero* (2012) 55 Cal.4th 262, and *People v. Mendez* (2010) 188 Cal.App.4th 47. Defendant's reliance on these cases is unavailing. These cases are inapposite.

The Supreme Court in *Miller* held that "mandatory life without parole for those *under the age of 18 at the time of their crimes* violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" (*Miller*, *supra*, 132 S.Ct. at p. 2460.) The court did not ban imposition of a sentence of life without parole on a juvenile offender, but it did require sentencing courts to consider the differences between children and adults, "and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Id*. at p. 2469, fn. omitted.) Defendant was not a juvenile when he committed the instant crimes and, thus, *Miller* has no application here.

In *People v. Caballero*, *supra*, 55 Cal.4th 262, our Supreme Court held that sentencing a juvenile who commits a nonhomicide offense to a de facto sentence of life without parole is categorically cruel and unusual punishment. (*Id*. at p. 268.) In *People*

16

*v. Mendez, supra*, 188 Cal.App.4th 47, the appellate court held that a sentence of 84 years to life imposed on a defendant who was 16 when he committed several nonhomicide crimes was unconstitutional as constituting a de facto sentence of life without parole, which provided no meaningful opportunity for release. (*Id*. at pp. 63-64.) *Caballero* and *Mendez* are distinguishable because defendant here was not a juvenile when he committed his crimes.

In *People v. Argeta* (2012) 210 Cal.App.4th 1478, the court rejected the argument of an 18-year-old defendant that the holding of *Caballero* should be extended to his case. The court explained, "[W]hile '[d]rawing the line at 18 years of age is subject . . . to the objections always raised against categorical rules . . . [, it] is the point where society draws the line for many purposes between childhood and adulthood.' [Citations.] Making an exception for a defendant who committed a crime just five months past his 18th birthday opens the door for the next defendant who is only six months into adulthood. Such arguments would have no logical end, and so a line must be drawn at some point. We respect the line our society has drawn and which the United States Supreme Court has relied on for sentencing purposes . . . ." (*Id*. at p. 1482.) We agree with the reasoning of the court in *Argeta*; we conclude defendant's sentence was not categorically cruel and unusual punishment.

D.      *Section 654*

Defendant was convicted of 20 counts of robbery with a firearm use enhancement, two counts of attempted robbery with a firearm use enhancement, and 15 counts of felon

in possession of a firearm. The trial court imposed concurrent sentences of four years on the 15 counts of being a felon in possession of a firearm.

Defendant claims the trial court erred in imposing the concurrent sentences on his 15 convictions for being a felon in possession of a firearm. He argues that section 654 precludes imposition of sentences on those 15 counts because his sentence was enhanced for his use of a gun to commit the robberies, and the offenses and the enhancement were based on the same criminal act and were part of an indivisible transaction carried out with a single objective. The People respond defendant forfeited the issue by failing to object below and, in the alternative, claim defendant's claim lacks merit because the record supports the trial court's implied findings that defendant's possession of the firearm was antecedent to and separate from his use of the gun to commit the robberies.

Initially, we note defendant's failure to raise an objection in the trial court does not mean he forfeits his appellate challenge regarding the applicability of section 654. "[A] court acts in excess of its jurisdiction and imposes an unauthorized sentence when it fails to stay execution of a sentence under section 654. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 295.) Thus, subject to an exception not applicable here, the "'waiver doctrine does not apply to questions involving the applicability of section 654.'" (*Id.* at p. 295.)

Section 654, subdivision (a), provides that an "act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

18

omission be punished under more than one provision."  Section 654 precludes multiple punishment for a single act or a course of conduct comprising indivisible acts.  (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1142-1143 (*Jones*); *People v. Conners* (2008) 168 Cal.App.4th 443, 458; *People v. Moseley* (2008) 164 Cal.App.4th 1598, 1603.)  "'"'"Whether a course of criminal conduct is divisible . . . depends on the intent and objective of the actor.'  [Citations.]  '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent'"'"" and therefore may be punished only once.  (*Jones*, at p. 1143; see also *People v. Latimer* (1993) 5 Cal.4th 1203, 1208.)  If the defendant harbored multiple or simultaneous objectives, he or she may be punished for each violation committed in pursuit of each objective, even though the violations share common acts or were part of an otherwise indivisible course of conduct.  (*Jones*, at p. 1143; *People v. Conners*, at p. 458.)

Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination.  (*Jones*, *supra*, 103 Cal.App.4th at p. 1143; *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.)  The trial court's findings will not be reversed on appeal if there is substantial evidence to support them.  (*Jones*, at p. 1143; *People v. Perry* (2007) 154 Cal.App.4th 1521, 1525.)  "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence."  (*Jones*, at p. 1143.)

19

Appellate courts have disagreed as to whether section 654 applies to enhancements. (*People v. Coronado* (1995) 12 Cal.4th 145, 157 (*Coronado*); see also *People v. Oates* (2004) 32 Cal.4th 1048, 1066, fn. 7.) There are two different categories of sentence enhancements: (1) status enhancements, which go to the nature of the offender, such as recidivist enhancements; and (2) conduct enhancements, which go to the nature of the offense, such as firearm or bodily injury enhancements. (*Coronado*, at p. 156; *People v. Ahmed* (2011) 53 Cal.4th 156, 161 (*Ahmed*); *People v. Rodriguez* (1988) 206 Cal.App.3d 517, 519.) *Coronado* held that section 654 does not apply to prior conviction enhancements (status enhancements) because they "'relate to the status of the recidivist offender engaging in criminal conduct, not to the conduct itself.'" (*Coronado*, at p. 157.) Because a "repeat offender (recidivist) enhancement" does not implicate multiple punishment of an act or omission, section 654 is inapplicable. (*Coronado*, at p. 158; see also *People v. Price* (1992) 4 Cal.App.4th 1272, 1277 [§ 667, subd. (a), creates a status not a conduct enhancement, and § 654 does not apply].) The court in *Coronado* left open the question of whether section 654 can apply, at least, to some conduct enhancements.

The modern trend has been for appellate courts to hold, or at least to assume, that section 654 does apply to conduct enhancements. (*Ahmed*, *supra*, 53 Cal.4th at p. 162.) This trend is supported by the express language of section 654 which "proscribes multiple punishment for the same act." (*People v. Moringlane* (1982) 127 Cal.App.3d 811, 817-818, disapproved on other grounds in *People v. Jones* (1991) 53 Cal.3d 1115,

1144-1145.)  Section 654 states that it applies to "different provisions of law" that punish "an act or omission" in different ways.  Nothing in section 654 explicitly prohibits its application to enhancements.

In *Ahmed*, the Supreme Court confirmed that "as a default, section 654 does apply to enhancements [other than status enhancements dealt with in *Coronado*] when the specific statutes do not provide the answer."  (*Ahmed*, *supra*, 53 Cal.4th at p. 163.)  *Ahmed* involved the question of whether section 654 prohibits imposition of both the great bodily injury enhancement and the firearm use enhancement because both apply to the same act.  (*Ahmed*, at p. 162.)

Section 12021, subdivision (a)(1), which criminalizes possession of a firearm by a felon, "presents a unique circumstance in the minefield of section 654 cases in that this charge involves an important policy consideration."  (*People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1409 [Fourth Dist., Div. Two].)  The statute's intent was to minimize the danger to public safety posed by access to weapons that can be used in crimes of violence, and "'[t]he law presumes the danger is greater when the person possessing the concealable firearm has previously been convicted of felony . . . .  [Citation.]'"  (*Ibid*.)  When a defendant felon violates section 12021 by possessing a firearm during the commission of an offense, for purposes of section 654 analysis, the question is whether there is substantial evidence that the firearm possession ""'"constitutes a divisible transaction from the offense in which he employs the weapon [and] depends upon the facts and evidence of each individual case.  Thus where the evidence shows a possession

21

distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved.  On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense."'"" (*Jones*, *supra*, 103 Cal.App.4th at p. 1143; see also *People v. Bradford* (1976) 17 Cal.3d 8, 22.)

For example, in *People v. Killman* (1975) 51 Cal.App.3d 951, the defendant had given his girlfriend money to purchase a gun.  Several months before the robbery, the defendant used the gun for target practice and took it with him when he moved to a new residence.  (*Id*. at p. 955.)  Section 654 did not bar punishment on both first degree robbery and firearm possession charges; the defendant was properly punished "for his own personal possession of the gun before the robbery."  (*Killman*, at p. 959; see also *People v. Garfield* (1979) 92 Cal.App.3d 475, 478 [defendant properly sentenced for burglary and possession of a weapon by a narcotics addict, based upon his possession of a firearm stolen during the burglary; he had the weapon in his personal possession when arrested six days after the burglary and had not stored it with the rest of the fruits of the burglary].)

In *People v. Ratcliff*, *supra*, 223 Cal.App.3d 1401, the defendant used a handgun to commit two robberies an hour and one-half apart.  When he was apprehended approximately one-half hour after the second robbery, the handgun was still in his possession.  We rejected the defendant's argument that section 654 precluded punishment for both the ex-felon in possession of a firearm conviction and the firearm use

enhancement. We explained: "the defendant already had the handgun in his possession when he arrived at the scene of the first robbery. A justifiable inference from this evidence is that defendant's possession of the weapon was not merely simultaneous with the robberies, but continued before, during and after those crimes. Section 654 therefore does not prohibit separate punishments. [Citation.] [¶] . . . [¶] Commission of a crime under section 12021 is complete once the intent to possess is perfected by possession. What the ex-felon does with the weapon later is another separate and distinct transaction undertaken with an additional intent which necessarily is something more than the mere intent to possess the proscribed weapon. [Citations.] In other words, in the case here, defendant's intent to possess the weapon did not import or include the intent to commit the robberies." (*Ratcliff*, at pp. 1413-1414.)

On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper. (*People v. Garcia* (1978) 86 Cal.App.3d 314, 317.) *People v. Jurado* (1972) 25 Cal.App.3d 1027 (*Jurado*) is illustrative. In that case, the Court of Appeal concluded that where a weapon was possessed in commission of a burglary and was the basis for elevating that offense to first degree, and there was no evidence that the defendant possessed the gun before or after the burglary, the defendant could not properly be sentenced for both burglary and carrying a concealed weapon, even if the terms were to run concurrently. (*Id*. at p. 1033; *People v. Duran* (1976) 16 Cal.3d 282, 296, fn. 16 [citing *Jurado* with approval and in dictum stating, "We note, however, that as there is no

23

evidence in the record now before us that defendant possessed the weapon except during the assault," and "he could not have been properly sentenced under both violations found against him"].)

*People v. Mustafaa* (1994) 22 Cal.App.4th 1305 is also instructive. In that case, the defendant pled guilty to three robbery counts, admitted that he was personally armed with a firearm on those occasions, and admitted that he was a felon in possession of a firearm in each of those instances. (*Id*. at p. 1309.) Because the prison term imposed for one count of possession of a firearm by a convicted felon "appear[ed] to be based on the same conduct as that on which the term for the personal gun-use enhancement . . . was based" (*id*. at p. 1312), at the change of plea hearing "the court referred to [the defendant's] gun possession only as part of the robbery incident and not to his gun possession at the time of his arrest" (*ibid*.), and "there was no stipulation that the plea was based on the preliminary hearing or police reports" (*ibid*.), the court held that the sentence on the count of possession of a firearm by a convicted felon violated section 654.

Here, the People assert that the trial court's implied findings show "[t]he evidence was sufficient to infer that [defendant]'s possession of the firearm was antecedent to and separate from his use of the gun to commit the robbery offenses." The People further argue that "[t]he evidence likewise supported the reasonable inference that [defendant] harbored separate intents in the commission of using a gun to commit the robberies and being a felon in possession of a firearm." However, the court expressly stated, "I intend

to run all the burglaries 654. I intend to run all the felon in possession of a gun 654. Other than that, I don't see what other issues there are." Nonetheless, when the court pronounced sentence on each of the 15 counts for felon in possession of a firearm, it imposed a concurrent sentence of four years on each of those counts. Hence, the record is ambiguous as to the court's findings, and a remand is necessary.[3]

While a reasonable inference can be made that defendant must have had possession of the gun for some period of time before he entered the retail establishments to commit the robberies, the appellate record is unclear and lacking of substantial evidence that defendant's possession of a firearm had any objective other than to assist in the robberies. Under the circumstances of this case, especially in light of the court's explicit comment to stay sentence on the 15 convictions for felon in possession of a firearm under section 654, and defendant's separate punishments on both the substantive robbery offenses and the attached gun use enhancements, we believe a remand is necessary.

E.     *Correction to Abstract of Judgment and Court's Minute Order*

Defendant also contends, and the People agree, that the abstract of judgment and the court's minute order must be modified to reflect the court's oral pronouncement. Defendant notes that there are discrepancies between the trial court's oral pronouncement

---

[3] The People maintain that "[a] remand is not warranted because [defendant] did not object to the court's imposition of concurrent sentences." We reject this claim. As previously noted, the waiver doctrine does not apply to questions involving section 654. (*People v. Perez* (1979) 23 Cal.3d 545, 549-550, fn. 3; *People v. Hester*, *supra*, 22 Cal.4th at p. 295.)

25

at sentencing and the court's minute order and/or abstract of judgment as to counts 5, 7, 31, 57, and 59. We also agree and note there are discrepancies, not pointed out by either party, as to count 11.

As to count 11 (attempted robbery), at the time of oral pronouncement of judgment, the court ordered count 11 stayed pursuant to section 654 at one point in the proceedings, but later, following a discussion off the record, the court imposed it and its attendant firearm use enhancement consecutively. The People note that the court stayed count 11 pursuant to section 654; defendant, however, notes that count 11, as well as the attached enhancement, was imposed consecutively. The abstract of judgment notes count 11 was imposed consecutively.

As to count 5, the parties state that the court erred in imposing and then staying a firearm enhancement as to count 5 because a firearm enhancement was not alleged as to defendant. The parties are mistaken. The information clearly charges defendant with personal use of a firearm as to count 5. As such, the trial court correctly imposed and stayed the firearm enhancement as to count 5. As to counts 7, 31, 57, and 59, we agree with the parties that the court's minute order and/or the abstract of judgment incorrectly reflect the sentence imposed by the court at the time of sentencing. Accordingly, on remand the trial court is to correct these discrepancies.

III

DISPOSITION

The matter is remanded to the trial court with directions to:

26

(1)  Consider whether punishment for the 15 counts of felon in possession of a firearm should be stayed pursuant to section 654;

(2)  Correct the abstract of judgment and the court's minute order of the sentencing hearing to reflect the court's oral pronouncement of judgment; and

(3)  Forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAMIREZ
P. J.


We concur:


HOLLENHORST
J.


CODRINGTON
J.

27